IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

TONI V. MEJIAS CRUZ

    Plaintiff

        v.                                    CIVIL NO. 98-1914 (JAG)

CENTENNIAL P. R. WIRELESS CORP., et al

    Defendants

---

## REPORT AND RECOMMENDATION

Plaintiff Toni V. Mejías-Cruz (hereinafter "Mejías") filed this action against its former employer, Centennial, alleging that she was discharged because of her pregnancy in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., and for violations of Puerto Rico law. Defendant Centennial filed a Motion for Summary Judgment on July 19, 1999. (See Docket No. 14). Plaintiff Mejías filed an opposition to the Summary Judgment Motion on September 15, 1999 (see Docket No. 24), and an addendum thereto on September 16, 1999. (See Docket No 25). Centennial filed a reply to plaintiff's opposition on October 7, 1999. (Docket No. 27). The matter was referred for report and recommendation on January 22, 2002. (Docket No. 46).

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions: The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The critical question is whether a genuine issue of material fact exists. A genuine issue exists if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial. Morris v. Government Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511 U.S. 1018 (1994). A fact is material if it




**CIVIL NO. 98-1914 (JAG)**                                        2

might affect the outcome of the suit under the governing law. Morrisey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995); Maldonando Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). On a motion for summary judgment, the court must view all evidence and related inferences in the light most favorable to the nonmoving party. See Springfield Terminal Ry. v. Canadian Pac. Ltd., 133 F.3d 103, 106 (1st Cir. 1997). Nonetheless, the court is free to "ignore 'conclusory allegations, improbable inferences and unsupported speculation.'" Súarez v. Pueblo International, Inc., 229 F.3d 49, 53 (1st Cir. 2000) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

In order to aid the court in the daunting task of searching for genuine issues of material fact in the record, this district adopted Local Rule 311.12. See, e.g., Corrada Betances v. Sea-Land Service, Inc., 248 F.3d 40, 43-44 (1st Cir. 2001); Morales v. Orssleff's EFTE, 246 F.3d 32, 33-35 (1st Cir. 2001); Ruiz Rivera v. Riley, 209 F.3d 24, 27-28 (1st Cir. 2000). This rule, requires, in relevant part, that a party moving for summary judgment submits, in support of the motion, "a separate, short concise statement of material facts as to which the moving party contends there is no genuine issue to be tried and the basis of such contention as to each material fact, properly supported by specific reference to the record." D.P.R.R. 311.12.

It is clearly established in this District that compliance with Local Rule 311.12 is critical, given that the Court will only consider the facts alleged in the aforementioned 311.12 statements when entertaining the parties' arguments. See Rivera de Torres v. Telefónica de Puerto Rico, 913 F.Supp. 81 (D.P.R. 1995). In the instant case, the movant (Centennial) complied with the directives of Local Rule 311.12. (See Docket 14, pgs. 3-11). Therefore, Mejías, was obliged by the same Local Rule "to proffer a comparable statement limning 'the material facts as to which [she] contend that there exists a genuine issue to be tried, properly supported by specific reference to the record.'" Corrada Betances v. Sea-Land Service, Inc., 248 F.3d 40, 43 (1st Cir. 2001)(citing D.P.R.R. 311.12). This she has failed to do.[1] Therefore, plaintiff Mejías' "failure to present a statement of disputed

---

[1] In her opposition, plaintiff enumerates nine "controverted issues of fact" (see Docket No. 24, pgs. 8-19), which she alleges are sufficient proof that there exist genuine issues of material fact warranting the denial of defendant's Motion for Summary Judgment. Not only are these so-

CIVIL NO. 98-1914 (JAG)                                3

facts, embroidered with specific citations to the record, justifies [that this] [C]ourt[] deem[s] the facts presented in the movant's statement of undisputed facts admitted." Corrada Betances v. Sea-Land Service, Inc., 248 F.3d at 43 (citing Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000). Accord Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 34 (1st Cir. 2001)).

In view of plaintiff's outright disregard of Local Rule 311.12[2], the Court will outline the relevant facts of the case in the light most favorable to her, based solely on those facts contained in Centennial's 311.12 statement.

## FACTUAL BACKGROUND

Centennial P.R. Wireless, Corp. (hereinafter "Centennial"), a Delaware corporation duly authorized to conduct business in Puerto Rico, began to provide communication services in the island sometime in December 1996. (See Docket No. 14, Exhibit 21). Centennial began its administrative operations in Puerto Rico at an office located in Camuñas Street, Tres Monjitas Industrial Park, and later opened another office at the Telefónica Larga Distancia (TLD) premises in Guaynabo. (See Docket No. 14, Exhibit 3).

Multiforce, a temporary employment agency, interviewed and hired plaintiff Mejías and assigned her to work at Centennial. (See Docket No. 14, Exhibit 6; Exhibit 1, ¶¶ 4- 6). After signing an employment agreement with Multiforce on September 9, 1996, Ms. Mejías began to work at Centennial as Mr. Amaury Rivera's[3] Administrative Assistant. (See Docket No. 14, Exhibit 1, ¶ 6; Exhibit 10). Defendant Centennial contends that during the hiring process, Ms Mejías was

---

called "controverted issues of fact" not in compliance with Rule 311.12, but they are mostly general, immaterial and conclusory allegations devoid of references to the record. (See, e.g., Docket No. 24, pg. 17-18, controverted issue of fact # 8 and #9).

[2] It should be noted that *in lieu* of a proper 311.12 statement, plaintiff filed a Motion on February 26, 2001 (Docket No. 36) asking this Court to take judicial notice of the opinion in the case of Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000). The Court can not and will not take as true any of the facts contained in that opinion for purposes of this case.

[3] Mr. Amaury Rivera was Centennial's former Vice-president and General Manager.

**CIVIL NO. 98-1914 (JAG)**                           4

aware that during the probationary period[4] with Centennial, she was an employee of Multiforce and not an employee of Centennial.[5] (See Docket No. 14, Exhibit 1, ¶ 7; Exhibit 10).

Centennial made an employment offer to Ms Mejías on or about December 18, 1997, which she declined. (See Docket No. 14, Exhibit 20, pgs. 103-107). Ms. Mejías rejected Centennial's offer of employment because she thought that the salary that she was offered was too low. (See Docket No. 14, Exhibit 1, ¶ 9; Exhibit 2, ¶ 11). She then made a counter-offer which Centennial never accepted.

Defendant Centennial contends that on January 24, 1997, Mejías took a two-hour lunch break at mid-day, and left the office again between 4:00 and 5:30 pm (See Docket No. 14, Exhibit 1, ¶ 10; Exhibit 5). On Monday, January 27, 1997, Mejías submitted her time card to Mr. Gualberto Ortiz, Centennial's Accounting Manager, for approval. In the time card, Ms. Mejías reported that on January 24th she took her lunch break between 4:00 and 5:30 pm, and charged an hour of double-time rate. (See Docket No. 14, Exhibit 5). After questioning several employees of Ms. Mejías's whereabouts on the date in question, Mr. Ortiz concluded that plaintiff Mejías had printed false information in her time cards. (See Docket No. 14, Exhibit 1, ¶ 10; Exhibit 2, ¶ 5). Upon finding about the discrepancies in the time card, Mr. Amaury Rivera requested the immediate replacement of Ms. Mejías. (See Docket No. 14, Exhibit 1, ¶ 10; Exhibit 3, ¶¶ 13-14).

That same day, Ms. Mejías was contacted and asked to report to Multiforce the next morning and not to Centennial. On January 28, 1997, however, Ms. Mejías failed to report to Multiforce.

---

[4] Plaintiff was supposed to work at Centennial, while employed by Multiforce, for a probationary period lasting 90-days. At which time, Centennial would consider making her an employment offer at the Company. In fact, the record shows that plaintiff was indeed offered a position which she declined.

[5] In an effort to establish that Ms. Mejías was in fact an employee of Multiforce and not Centennial, defendant has set forth proof of several facts: (1) that plaintiff received Multiforce's employee manual (see Docket No. 14, Exhibit 9); (2) that she was required to fill out time cards for Multiforce reporting her daily entry and exit times at Centennial in order get a paycheck (see Docket No. 14, Exhibit 1, ¶ 8; Exhibit 20, p. 33; Exhibit 4; Exhibit 16); (3) that she never received vacation, sick leave, health insurance benefits, and/or retirement benefits from Centennial; and, (4) that she never signed an employment agreement with Centennial nor received a paycheck from Centennial (see Docket No. 14, Exhibit 20, pgs. 129-132).

**CIVIL NO. 98-1914 (JAG)**                             5

The next day she met with Ms. Eva Sepúlveda[6] at Multiforce's premises to talk about Centennial's request for a replacement. (See Docket No. 14, Exhibit 1, ¶ 11). Plaintiff Mejías told Ms. Sepúlveda that she thought her assignment at Centennial was terminated because she had recently misinformed Mr. Amaury Rivera about the date of a meeting which he therefore missed. (See Docket No. 14, Exhibit 1, ¶ 11; Exhibit 2, ¶ 7; Exhibit 3, ¶ 11). Plaintiff Mejías did not mention to Ms. Sepúlveda at this time that she was pregnant, or her alleged belief that her dismissal was related to her pregnancy. (See Docket No. 14, Exhibit 1, ¶ 11).

On February 4, 1997, Ms. Mejías went to Multiforce and requested to see her employment agreement. At that time, plaintiff told Ms. Sepúlveda for the first time that she was pregnant and that she thought that she had been dismissed from Centennial because she had kids. Ms. Mejías asked Ms. Sepúlveda whether she had heard something about her pregnancy from Centennial's personnel, but Ms. Sepúlveda replied that she did not. (See Docket No. 14, Exhibit 1, ¶ 12). Plaintiff indicated to Ms. Sepúlveda that she had not said anything at Centennial about her pregnancy because she was waiting for a counter-offer from Company for a permanent employment position. (See Exhibit 1, ¶ 13).

Defendant further alleges that noone at Centennial knew about Ms. Mejías's pregnancy prior to her employment termination. Not even Hadid Kieny, an employee who shared a work station with plaintiff and with whom she talked about personal matters, knew of Ms. Mejías's pregnancy. (See Docket No. 14, Exhibit 2, ¶ 9; Exhibit 3, ¶¶ 8-9).

Defendant Centennial contends that the reason it asked MultiForce to terminate Ms. Mejías's assignment at Centennial was related to her continuous mistakes and neglect regarding Mr. Amaury Rivera's matters, and her rendering of false information in her time card of January 24, 1997. (See Docket No. 14, Exhibit 3, ¶ 14). Defendant claims that Ms Mejías often arrived late for work and took long hours for lunch, and thus she was sometimes unavailable when her supervisors needed her. (See Docket No. 14, Exhibit 2, ¶¶ 3-4). In addition, Centennial asserts that Ms. Mejías was not organized and never filed documents properly. (See Docket No. 14, Exhibit 2, ¶ 6). After

---

[6]    Ms. Eva Sepúlveda Vega was Multiforce's Office Manager.

Ms. Mejías left Centennial Ms. Kieny had to help plaintiff's replacement, Ms. María Pérez, to organize and file the documents that had been produced during Ms. Mejías's assignment at Centennial and had been thrown by her in a cardboard box and a pendaflex folder, rather than being properly filed. (See Docket No. 14, Exhibit 2, ¶ 12). In its effort to explain plaintiff's discharge, Centennial again makes reference to the time in which she misinformed her direct supervisor, Mr. Amaury Rivera, about his appointment. (See Docket No. 14, Exhibit 2, ¶ 7; Exhibit 1, ¶ 11; Exhibit 3, ¶ 11).

After Centennial requested Ms. Mejías's replacement, Multiforce offered plaintiff other job assignments which she refused. (See Docket No. 14, Exhibit 1, ¶ 14).

## TITLE VII

Title VII makes it unlawful for an employer "to discharge any individual...because of such individual's...sex." 42 U.S.C. § 2000e-2(a)(1). "If the employer's decision is made 'because of or on the basis of pregnancy, childbirth, or related medical conditions,' it is made 'because of sex.'" Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000)(citing 42 U.S.C. § 2000e(k)). Plaintiff Mejías has the burden of proving that defendant Centennial discriminated against her in violation of Title VII because of her pregnancy. Given that the record contains no direct proof of a discriminatory motive on the part of Centennial, the Court will apply the three-stage, burden-shifting framework first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and further delineated in Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981), and St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993). See, e.g., Cumpiano v. Banco Santander de Puerto Rico, 902 F.2d 148, 153 (1st Cir. 1990).

Under the aforementioned burden-shifting framework, plaintiff Mejías must first establish a *prima facie* case of pregnancy discrimination by showing that: "(1) she is pregnant (or has communicated an intention to become pregnant); (2) her job performance was satisfactory; but (3) nonetheless, the employer dismissed [her] from employment; while (4) a comparably qualified person continued to have her duties performed." Mejías-Miranda v. BBII Acquisition Corp., 120 F.Supp.2d 157, 162-63 (D.P.R. 2000)(citing Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 421 (1st

CIVIL NO. 98-1914 (JAG)                              7

Cir. 1996)).

The task of establishing a prima facie case is not onerous. See, Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d at 54 (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. at 253). However, Mejías's burden is magnified by her failure to file a 311.12 statement as required by the Local Rules of this district. The record shows that plaintiff Mejías was fired, that she was pregnant at the time, and that someone else (María Pérez) continued to perform her responsibilities at Centennial. Whether Mejías performed her job satisfactorily remains unclear. In addition, there is an issue of whether or not Centennial was in fact Ms. Mejías's employer[7] and whether the Company had any knowledge of Mejías's pregnancy. However, given the minimal burden of establishing a *prima facie* case, and the fact that an "employer's nondiscriminatory reason [is] 'irretrievably intertwined' where the employer asserts that it discharged the plaintiff because" of unsatisfactory job performance, this Court will assume, *arguendo*, that Ms. Mejías did establish the requisite *prima facie* case and conduct the second inquiry. See Alvarez Cabrera v. Trataros Construction, Inc., 2002 WL 200929 at *4 (D.P.R. 2002).

"Once established, the *prima facie* case serves only to shift the burden of production to [Centennial]," which must then articulate a "legitimate, nondiscriminatory reason that justifies the firing." Cumpiano v. Banco Santander de Puerto Rico, 902 F.2d 148, 153 (1st Cir. 1990)(internal citations omitted). Centennial advances the following nondiscriminatory reasons[8] for firing Mejías: (1) that she included false information on her time card of January 24, 1997; (2) that Mr. Amaury Rivera missed a meeting due to Ms. Mejías's fault; (3) that Ms. Mejías was often late for work and took long lunch breaks; and, (4) that Ms. Mejías's filing practices were inappropriate. Since

---

[7] Defendant Centennial devotes a great deal of its motion to prove that Mejías was not its employee, while Mejías devotes most of his opposition to argue the opposite. (See Docket No. 14; Docket No. 24, pgs. 8-11; Docket No. 25). The Court will not address this issue due to Mejías's failure to submit a proper 311.12 statement with a competent factual basis for this inquiry. The Court, will assume, without deciding, that Centennial was Mejías's employer for purposes of this opinion.

[8] All of Centennial's proffered evidence in support of its assertion that Mejías's discharge was nondiscriminatory is properly supported by the record. (See Docket No.14, 311.12 statement and attached exhibits).

**CIVIL NO. 98-1914 (JAG)**                                    8

Centennial articulated a nondiscriminatory basis for plaintiff's discharge, the burden shifts back to plaintiff Mejías to prove (at the very least) that the reason assigned for her discharge was pretextual. See Conto v. Concord Hospital, Inc., 265 F.3d 79, (1st Cir. 2001)(citing Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33-34 (1st Cir. 2001)). In other words, under the McDonnell Douglas framework plaintiff Mejías needs to "present sufficient evidence to show both that the employer's articulated reason . . . is a pretext and that the true reason is discriminatory." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d at 54 (citing Thomas v. Eastman Kodak Co., 183 F.3d 38, 56 (1st Cir. 1999), cert. denied, 528 U.S. 1161 (2000)).

In an effort to establish that Centennial's stated reasons for her dismissal are a pretext for discrimination, Ms. Mejías makes reference to several discriminatory remarks about pregnancy and pregnant women allegedly made by several of her co-workers: in particular, Mr. Gualberto Ortiz and Ms. Aida Gómez.[9] Plaintiff Mejías makes a single general reference in her opposition to defendant's Motion for Summary Judgment relative to the alleged discriminatory remarks. (See Docket No. 24, pg. 12-13, Fifth Controverted Issue of Fact). In her opposition, plaintiff not only fails to tell the Court with about the specific nature of the remarks, but also, and more importantly when they were made. Given that plaintiff Mejías has failed to establish a casual connection between the remarks and time of her discharge, this Court cannot view the same as evidence of discrimination, but rather as stray remarks. See e.g., Delgado Graulau v. Pegasus Communications of Puerto Rico, 130 F.Supp.2d 320, 330 (D.P.R. 2001). See also Alvarez Cabrera v. Trataros Construction, Inc., 2002 WL 200929 at *6 (D.P.R. 2002).

In an effort to establish a connection between her dismissal and her pregnancy, Mejías claims that she told Mr. Amaury Rivera that she was pregnant several days before she was dismissed. (See Docket No. 24, pg. 16, Seventh Controverted Issue of Fact). Plaintiff fails to make a single reference to the record in support of this allegation, and this Court will not peruse through the

---

[9] There is a great deal of discussion in the parties's briefs about whether or not Ms. Mejías was in contact with Mr. Ortiz and Ms.Gómez, given that they worked in different buildings. For purposes of this opinion, however, the Court will assume that the employees had some contact with one another even while working in different locations, and as such could have had the opportunity to make the alleged discriminatory remarks.

CIVIL NO. 98-1914 (JAG)                                           9

record in an effort to find such support.

Mejías further argues that the fact that she was offered a permanent position at Centennial sometime in mid-December of 1996, should constitute enough proof of the fact that defendant was not dissatisfied with her work, and as such Centennial's proffered reason for her dismissal is pretextual. In addition, Mejías attached two sworn statements by two of her co-workers, who stated in very general terms that they never heard Mr. Amaury Rivera complaining about plaintiff's work, and that indeed he was very impressed with her work and her English. (See Docket No. 24, Exhibits 1 and 2). Even taking all of plaintiff's allegations as true, the fact remains that the incident of the false information in the time card[10] occurred **after** plaintiff had refused Centennial's offer of employment, and that the incident prompted her supervisors to take action and ask Multiforce for a replacement. The First Circuit Court has repeatedly stated that district courts should "not assume the role of super personnel departments to assess the merits or even the rationality of non discriminatory business reasons." Maldonado-Maldonado v. Pantasia Mfg. Corp., 983 F.Supp 58, 65 (D.P.R. 1997)(citations omitted). Whether or not Centennial's reason to terminate Mejías was rational or not is immaterial, as long as it was not based on unlawful discrimination. Because the record, viewed in the light most favorable to the plaintiff, does not raise a genuine issue of material fact relative to the issue of pretext, Mejías's discrimination claim should be **DISMISSED**.

## CONCLUSION

In view of the aforementioned, this Court recommends that defendant Centennial's Motion for Summary Judgment (Docket No. 14) be **GRANTED**, and that the case, including the supplemental law claims be **DISMISSED**.

Under the provisions of Rule 510.2, Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of the Court within ten (10) days of the party's receipt of this report and recommendation. The written

---

[10] It should be noted that plaintiff Mejías never denies the fact that her time card of January 24, 1997 contained false information.

**CIVIL NO. 98-1914 (JAG)**                                    10

objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch v. Massachusetts Elec., 840 F.2d 985 (1st Cir. 1988); Borden v. Secretary of Health and Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

**SO RECOMMENDED.**

In San Juan, Puerto Rico, this 22nd day of February, 2002.

GUSTAVO A. GELPI
United States Magistrate-Judge